UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DEREK LANEY,                          )
                                      )
              Plaintiff,              )
                                      )
      v.                              )        Case No. 4:18 CV 1575 CDP
                                      )
CITY OF ST. LOUIS, MISSOURI,          )
et al.,                               )
                                      )
              Defendants.             )

## MEMORANDUM AND ORDER

Plaintiff Derek Laney claims that during peaceful protest activity following

the September 15, 2017, verdict in *State of Missouri v. Stockley*, defendant Scott

Boyher, a lieutenant with the St. Louis Metropolitan Police Department

(SLMPD),[1] sprayed him in the face with pepper spray without warning and with no

attempt to arrest him. Laney brings this civil rights action under 42 U.S.C. § 1983

against Boyher alleging violations of his First and Fourth Amendment rights,[2] and

against the City of St. Louis alleging municipal liability for Boyher's unlawful

actions. Laney also brings supplemental state-law claims against Boyher and the

City, alleging assault, intentional and negligent infliction of emotional distress, and

battery. The City and Boyher move to dismiss Laney's claims. Alternatively, they

---

[1] The St. Louis Metropolitan Police Department is a department of the City of St. Louis.

[2] Boyher is sued in both his official and individual capacities.

seek to strike certain allegations from Laney's complaint.  For the reasons that follow, I will dismiss the failure to train claim and the claims for punitive damages on the state-law counts, but I will otherwise deny the motion.

## Background[3]

On September 15, 2017, the Circuit Court of the City of St. Louis issued its findings and verdict in *Stockley*, prompting some members of the public to engage in protest activity around the St. Louis metropolitan area, including within the City of St. Louis.  The protests concerned not only the verdict itself but broader issues, including racism and the use of force by police officers.  The participants often expressed views critical of police.

Plaintiff Laney, a resident of the City of St. Louis, joined the protest activity on September 15 in downtown St. Louis.  Laney observed a group of female protesters lock arms with each other and stand in front of a bus being used by the police department.  When Laney observed City police officers use bicycles to hit the female protestors, he complained to an officer about the treatment.  This officer used his bicycle to push Laney backward, in response to which Laney raised his hands in the air and slowly backed away from the officer.[4]  Defendant Boyher then came from behind Laney and sprayed him in the face with pepper spray, using a

---

[3] The facts set out here are taken from the allegations in the operative complaint and are considered true for the purpose of this Memorandum and Order.

[4] Laney makes no claim against this unknown officer nor makes the bicycle incident itself the basis of any claim.

one-foot long "big defogger." (ECF 18 at ¶ 46.) Boyher did not give Laney any warning or make any attempt to arrest Laney. Boyher left the area after he sprayed Laney. For twenty-four hours after being sprayed with pepper spray, Laney experienced pain, burning eyes, mucus running from his nose, and labored breathing.

Laney claims that he was not engaged in any unlawful behavior that required the use of pepper spray. He also claims that no life or property was in danger when Boyher sprayed him.

Laney filed this action on September 17, 2018, and filed a seven-count amended complaint on January 9, 2019, asserting the following claims under 42 U.S.C. § 1983: that Boyher violated his First and Fourteenth Amendment rights to freedom of speech, freedom of assembly, and freedom of the press (Count 1); that Boyher violated his Fourth and Fourteenth Amendment right to be free from excessive use of force (Count 6); and that the City is liable under *Monell*[5] because the violations of his civil rights were caused by a policy, practice, or custom of the City and by its failure to train, discipline, and supervise its police officers (Count 2). Laney brings supplemental state-law claims against both Boyher and the City, alleging that the use of pepper spray in the circumstances here constituted assault (Count 3) and battery (Count 7); and that the use of pepper spray in the circumstances constituted intentional infliction of emotional distress (Count 4) or,

---

[5] *Monell v. Department of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

alternatively, negligent infliction of emotional distress (Count 5).  As relief, Laney

seeks compensatory damages, attorney's fees, expenses, and costs on his § 1983

claims; and punitive damages on his state-law claims.

Both defendants move to dismiss the amended complaint in its entirety for

failure to comply with the "short and plain statement" requirement of Fed. R. Civ.

P. 8(a).  Boyher also moves to dismiss Laney's § 1983 claims against him under

Rule 12(b)(6), arguing that they fail to allege that he personally participated in the

alleged unconstitutional conduct.  As to the state-law claims, Boyher argues that

they should be dismissed under Missouri's official immunity doctrine.  The City

moves to dismiss Count 2 under Rule 12(b)(6), arguing that it fails to allege

sufficient facts to establish municipal liability under *Monell*.  The City also argues

that the state-law claims against it are likewise subject to dismissal under Rule

12(b)(6) on the basis of sovereign immunity.  Alternatively, both the City and

Boyher move to strike certain paragraphs of the amended complaint under Fed. R.

Civ. P. 12(f) as immaterial or impertinent.

### Legal Standard

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the

complaint.  When considering a Rule 12(b)(6) motion, I must assume the factual

allegations of the complaint to be true and construe them in favor of the plaintiff.

*Neitzke v. Williams,* 490 U.S. 319, 326-27 (1989).  I am not bound to accept as

true, however, a legal conclusion couched as a factual allegation.  *Bell Atl. Corp. v.*

*Twombly,* 550 U.S. 544, 555 (2007).

Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  In *Twombly,* the Supreme Court clarified that Rule 8(a)(2) requires complaints to contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  550 U.S. at 555; *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009).  Specifically, to survive a motion to dismiss, a complaint must contain enough factual allegations, accepted as true, to state a claim for relief "that is plausible on its face."  *Twombly,* 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Drawing on my "judicial experience and common sense," I must consider the plausibility of plaintiff's claim as a whole, not the plausibility of each individual allegation.  *Zoltek Corp. v. Structural Polymer Grp.,* 592 F.3d 893, 896 n.4 (8th Cir. 2010).  The factual allegations must be sufficient to "'raise a right to relief above the speculative level.'"  *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).

Rule 10(b) provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  "[A]ny redundant, immaterial, impertinent, or scandalous matter" may be stricken from the complaint.  Fed. R. Civ. P. 12(f).  Although courts enjoy

"broad discretion" in determining whether to strike a party's pleadings, such an action is "an extreme measure." *Stanbury Law Firm, P.A. v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000). Accordingly, motions to strike are "viewed with disfavor and are infrequently granted." *Id.*

## Discussion

A.    Motion to Dismiss Under Rule 8(a)

Defendants move to dismiss the amended complaint for failure to comply with the "short and plain" statement requirement of Rule 8(a), arguing that the complaint is "replete with tendentious, inflammatory, and immaterial allegations attacking the integrity of Missouri courts, injecting issues to which defendants cannot possibly frame a response, and including voluminous exhibits and references to other litigation without specifying wherein and how the exhibits reflect facts germane to plaintiff's claims." (ECF 26 at p. 2). Defendants claim they are prejudiced because they are forced to "try to guess at how much of the scattershot allegations actually pertain to plaintiff's claims against defendants, as opposed to individuals or to plaintiff's objections to policing in general." (*Id.*) Defendants also object to Laney's "inclusion of voluminous exhibits, such as the transcript of a preliminary injunction hearing in a parallel case," and assert that paragraphs of the complaint that allege a violation of a consent decree "fly in the face" of Rule 408(a) of the Federal Rules of Evidence. (*Id.* at p. 3.)

Under Rule 8(a), a pleading that states a claim for relief must contain a

"short and plain statement of the claim" showing that the pleader is entitled to relief.  Because *Twombly* and *Iqbal* require a plaintiff to show plausibility, complaints now "tend to include more factual detail and be longer than before[.]" *Aldridge v. City of St. Louis, Mo.*, No. 4:18-CV-1677 CAS, 2019 WL 1695982, at *4 (E.D. Mo. Apr. 17, 2019).  *See also Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 526 (7th Cir. 2015) ("plaintiff must include enough details about the subject-matter of the case to present a story that holds together.") (internal quotation marks and citation omitted); *Hernandez v. TLC of the Bay Area, Inc.*, 263 F. Supp. 3d 849, 853 (N.D. Cal. 2017) ("plaintiffs must include sufficient factual enhancement to cross the line between possibility and plausibility.") (internal quotation marks and citation omitted).  Here, Laney's amended complaint is twenty pages long, contains numbered paragraphs, separately identifies each defendant, makes specific factual allegations as to each defendant, and sets forth separate counts that identify each claim and the defendant(s) against whom it is asserted.

The factual allegations and supporting exhibits to which defendants object – *i.e.,* those concerning the *Stockley* verdict, the nature of public protests in response thereto, and prior orders of this court concerning SLMPD actions in response to public protests – are relevant to Laney's *Monell* claim against the City at minimum.  Defendants' bald assertion that the amended complaint's reference to

the consent decree entered in *Templeton* [6] violates Federal Rule of Evidence 408(a) is without merit, as the Rules of Evidence concern the admission of evidence, not pleading standards. *Aldridge*, 2019 WL 1695982, at *4.

In contrast to cases where dismissal under Rule 8(a) is appropriate, Laney's amended complaint here is not so lengthy, disorganized, vague, or ambiguous as to be unintelligible. *Cf. Michaelis v. Nebraska State Bar Ass'n*, 717 F.2d 437, 439 (8th Cir. 1983) (per curiam) (affirming dismissal of a 98-page pro se complaint, the "style and prolixity" of which "would have made an orderly trial impossible."); *Smith v. Republic Servs., Inc.*, No. 4:17 CV 302 CDP, 2017 WL 4038143, at *3 (E.D. Mo. Sept. 13, 2017) (dismissing complaint under Rule 12(b)(6), noting it violated Rule 8(a) because it did not contain numbered paragraphs, was "overly wordy with an incomprehensible pattern of capitalized and not capitalized words," and failed to clearly identify each defendant by name and articulate specific facts about that defendant's wrongful conduct); *Favaloro v. BJC Healthcare*, No. 4:14-CV-284 CAS, 2015 WL 1603054, at *2 (E.D. Mo. Apr. 9, 2015) (denying leave to file amended complaint for failure to comply with Rule 8 in relatively simple employment action where complaint was "90 pages long, include[d] 959 paragraphs, multiple subparagraphs, sub-subparagraphs (*i.e.*, ¶¶ 800.68.1, 800.68.2, 800.68.2, *et seq*.), and contain[ed] wholly irrelevant and scandalous material.").

---

[6] *Templeton v. Dotson*, Case No. 4:14CV2019 (E.D. Mo. 2014).

Defendants' motion to dismiss Laney's amended complaint for failure to comply with Rule 8(a) will be denied.

B.    Motion to Dismiss Under Rule 12(b)(6)

1.    *§ 1983 Claims Against Boyher*

Boyher argues that Laney's § 1983 claims against him are based on *respondeat superior* liability and do not state a claim because they do not allege that Boyher was aware of his subordinates' alleged unlawful conduct or that he tacitly approved the conduct.  Laney's claims, however, are not based on Boyher's supervisory capacity.  Instead, Laney specifically claims that Boyher personally engaged in the alleged unconstitutional conduct of spraying pepper spray directly in his face without warning and without purpose of arrest.  Although Boyher contends that Laney's statements regarding the unnamed, bicycle-wielding police officer attempts to place liability on Boyher as this officer's supervisor, reading these alleged facts against the backdrop of the entire amended complaint shows the purpose of these allegations is to place Boyher's personal conduct in context and not to seek relief relating to any alleged assault by the unnamed officer.

Boyher's motion to dismiss Laney's § 1983 claims against him will be denied.

2.    *Monell Claims Against the City*

In Count 2, Laney claims that the following policies, practices, or customs of the SLMPD caused Boyher to violate to his First and Fourth Amendment rights,

thereby making the City liable under *Monell:*

    a.      SLMPD officers' routine use of excessive force when policing protests, especially those at which police brutality is being protested;

    b.      SLMPD's policy or custom of issuing vague and even contradictory dispersal orders without giving an opportunity to comply;

    c.      SLMPD's policy of arbitrarily declaring unlawful assemblies in the absence of any threat or force or violent activity that provides no notice to citizens [of] unlawful conduct;

    d.      Additionally, SLMPD has a custom, policy, or practice of violating the Fourth Amendment by regularly conducting unreasonable seizures and arresting individuals without probable cause.

(ECF 18 at ¶ 68.) Laney also claims that the SLMPD's inadequate training, supervision, and discipline of its officers with respect to their use of force caused the alleged constitutional violations. (*Id.* at ¶ 69.)

For § 1983 liability to attach to the City, a governmental entity, Laney must show that a constitutional violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). In the motion to dismiss, the City argues that Laney's factual allegations are insufficient to establish any of these bases for liability.

    a.      Official Policy, or Custom or Practice

In the context of § 1983 municipal liability, the term "policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v.*

*City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016) (internal quotation marks and citation omitted). "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Board of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997). To establish liability based on "custom," Laney must demonstrate: 1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; 2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and 3) that he was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was a moving force behind the constitutional violation. *Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Laney need not identify the specific unconstitutional policy to survive the City's motion to dismiss, *see Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004), but he must, at the least, allege facts from which one "could begin to draw an inference" that the conduct complained of resulted from the existence of an unconstitutional policy or custom. *Id.*; *see also Doe ex rel. Doe v. School Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003) (complaint not considered deficient if it fails to incorporate language specifically alleging existence of unconstitutional policy or custom).

Here, the amended complaint alleges the existence of specific SLMPD policies or customs that Laney alleges were the moving force behind the constitutional violations he suffered.  (ECF 18 at ¶ 68.)  The amended complaint alleges sufficient facts to establish a pattern of conduct by SLMPD officers in their use of chemical agents without warning against peaceful protestors complaining of police actions; indeed, the amended complaint identifies several incidents that occurred prior to the incident alleged here, and specifically in October and November 2014, in May and August 2015, and in July 2017; as well as additional incidents that occurred on September 15, 2017, and thereafter.  The amended complaint also alleges that the City entered into a settlement agreement in March 2015 in *Templeton,* in which it agreed not to use chemical agents to disperse groups of individuals engaged in non-criminal activity without first issuing clear and unambiguous warnings that such chemical agents would be used (among other protections), but that thereafter SLMPD officers continued to use chemical agents against non-violent protestors.  These factual allegations are sufficient to support the existence of an unconstitutional policy or custom, from which one could draw a plausible inference that the conduct Laney complains of here resulted from an unconstitutional policy or custom.  *See Crumpley-Patterson*, 388 F.3d at 591.

The City's motion to dismiss Laney's *Monell* claims based on an unconstitutional policy or custom will be denied.

b.    Failure to Train or Supervise

The City argues that Laney fails to allege any facts to plausibly state a claim under this theory of liability and instead pleads "mere formulaic elements" of the cause of action.

To survive a motion to dismiss, a complaint must allege facts sufficient "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. To state a viable § 1983 claim against the City for failure to train and supervise, Laney must plead facts sufficient to show that:  1) the City's police officer training and supervision practices were inadequate; 2) the City was deliberately indifferent to the rights of others in adopting these training and supervision practices, and the City's failure to train and supervise was a result of deliberate and conscious choices it made; and 3) the City's alleged training and supervision deficiencies caused Laney's constitutional deprivation.  *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (citing *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996)).  Ultimately, Laney must prove that the City "'had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation.'" *Brewington v. Keener*, 902 F.3d 796, 803 (8th Cir. 2018) (quoting *Livers v. Schenck*, 700 F.3d 340, 356 (8th Cir. 2012)).

While the amended complaint pleads sufficient facts to plausibly show that the City had notice of a pattern of unconstitutional acts committed by SLMPD officers with respect to using chemical agents against peaceful protestors without

- 13 -

first giving warning, it does not plead facts sufficient to establish all of the elements of a claim for failure to train or supervise, and specifically, that its training and supervision practices were inadequate or that its failure to train and supervise was a result of deliberate and conscious choices.  Indeed, there are no factual allegations concerning a failure to train or supervise.  Instead, Laney's claim merely offers the conclusion that "Defendant City has inadequately trained, supervised, and disciplined SLMPD officers, with respect to its officers' use of force."  (ECF 18 at ¶ 69.)  I am "not required to divine the litigant's intent and create claims that are not clearly raised, and [I] need not conjure up unpled allegations to save a complaint."  *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (internal quotation marks and citations omitted).  Nor is it up to me "to try to . . . connect the dots between [a plaintiff's] allegations and [his] legal theories."  *Management Registry, Inc. v. A.W. Cos., Inc.*, 920 F.3d 1181, 1184 (8th Cir. Apr. 11, 2019).

Because Laney "fails to provide facts in his complaint to support his assertion that [the City] adopted deficient supervision and training practices with deliberate indifference to the constitutional rights of others, and that these training practices were the product of the [City's] deliberate and conscious choices," *Ulrich*, 715 F.3d at 1061, I will grant the City's motion to dismiss Laney's *Monell* claim to the extent it is based on the City's alleged failure to supervise, train, and discipline SLMPD police officers.

C.    State-Law Claims

1.    *Sovereign Immunity*[7]

"[I]n the absence of an express statutory exception to sovereign immunity, or a recognized common law exception such as the proprietary function and consent exceptions, sovereign immunity is the rule and applies to all suits against public entities[.]" *Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors*, 476 S.W.3d 913, 921-22 (Mo. banc 2016).

Missouri law provides three statutory exceptions to sovereign immunity, *see Martin v. Missouri Highway & Transp. Dep't*, 981 S.W.2d 577, 579 (Mo. Ct. App. 1998), where sovereign immunity is waived for torts arising out of:  1) the negligent operation of motor vehicles by public employees, *see* Mo. Rev. Stat. § 537.600.1(1); 2) injuries caused by the dangerous condition of public property, *see* Mo. Rev. Stat. § 537.600.1(2); or 3) when a political subdivision purchases liability insurance to cover tort claims other than those set out in § 537.600.1, in the amount of and for the purposes covered by the insurance purchased, *see* Mo. Rev. Stat. § 537.610.1.  *Hammer v. City of Osage Beach*, 318 F.3d 832, 841 (8th Cir. 2003); *Brennan ex rel. Brennan v. Curators of Univ. of Mo.*, 942 S.W.2d 432, 434 (Mo. Ct. App. 1997).  "Sovereign immunity is not an affirmative defense but

---

[7] A suit against a government employee in his or her official capacity is equivalent to a suit against the government entity itself, and sovereign immunity therefore also applies in the context of official-capacity claims.  *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985).  Accordingly, my discussion of sovereign immunity applies to Laney's claims against Boyher in his official capacity as well as Laney's claims against the City.

is part of the plaintiff's *prima facie* case." *St. John's Clinic, Inc. v. Pulaski Cty. Ambulance Dist.*, 422 S.W.3d 469, 471 (Mo. Ct. App. 2014), *cited approvingly in Newsome v. Kansas City, Mo. Sch. Dist.*, 520 S.W.3d 769, 776 (Mo. banc 2017). "[F]inding a municipality liable for torts is the exception to the general rule of sovereign immunity, and a plaintiff must plead with specificity facts demonstrating his claim falls within an exception to sovereign immunity." *Parish v. Novus Equities Co.*, 231 S.W.3d 236, 242 (Mo. Ct. App. 2007). "Whether sovereign immunity is waived in a particular case depends on whether the plaintiff's claim falls within the purposes covered by the defendant's policy." *Hummel v. St. Charles City R-3 Sch. Dist.*, 114 S.W.3d 282, 284 (Mo. Ct. App. 2003).

Here, each state-law claim in Laney's amended complaint alleges that:

Defendant City of St. Louis obtains insurance from the Public Facilities Protection Corporation, a not for profit corporation into which the City pays funds yearly. The funds are later disbursed by the corporation to *pay claims against the City*.

Alternatively, the City's relationship with the PFPC serves as a self-insurance plan. The 2017 Comprehensive Annual Financial Report for the City of St. Louis, Missouri states "[t]he PFPC is reported as if it were part of the primary government because its sole purpose is to provide the City with a defined and funded self-insurance program *for claims, judgments, and other related legal matters* . . . ."

By possessing such insurance or self-insurance, the City has waived sovereign immunity *on state claims* pursuant to § 537.610.1, RSMo.

(ECF 18, ¶¶ 76-78, 86-88, 93-95, 108-10.) (Emphasis added).

In *Fortenberry v. City of St. Louis,* another police-misconduct case against

- 16 -

the City, this district court recently determined that a complaint's allegation that the City self-insures through the PFPC to insure the City against "all claims" was sufficient to withstand the City's motion to dismiss state tort law claims on sovereign immunity grounds. *Fortenberry*, No. 4:18-CV-01937-JCH, 2019 WL 1242671, at *7 (E.D. Mo. Mar. 18, 2019). And in *Aldridge*, a similar case arising out of the *Stockley* protests, another judge of this court determined that allegations that the City obtained insurance from or is self-insured through PFPC for "claims, judgments, and other related legal matters" are sufficient to plead that the City waived its sovereign immunity under Mo. Rev. Stat. § 537.610.1 for the state tort law claims in that case. *See Aldridge*, 2019 WL 1695982, at *13.

Here, Laney makes the same allegations of PFPC insurance or self-insurance as those made in *Aldridge* on similar state tort law claims arising out of similar police-involved incidents. I agree with the reasoning in *Fortenberry* and *Aldridge.* Accepting the allegations of the amended complaint as true and according them all reasonable inferences, I agree that Laney has pled specific facts sufficiently demonstrating that his state tort law claims fall within an exception to sovereign immunity under Mo. Rev. Stat. § 537.610.1. I will therefore deny defendants' motion to dismiss to the extent they contend they are entitled to sovereign immunity on Laney's state-law claims.

2.     *Official Immunity*

Boyher claims that his conduct toward Laney as alleged was a discretionary

act performed in the exercise of his professional expertise in circumstances where it could arguably be believed that Laney himself was engaged in conduct proscribed by state law, that is, interference or attempt to interfere with an arrest. Given the discretionary nature of his act, Boyher claims he is entitled to official immunity on Laney's state-law claims.

Official immunity "protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Rhea v. Sapp*, 463 S.W.3d 370, 375-76 (Mo. Ct. App. 2015) (internal quotation marks and citation omitted). The doctrine does not apply, however, to discretionary acts "done in bad faith or with malice." *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 446 (Mo. banc 1986); *see also Mauzy v. Mexico Sch. Dist. No. 59*, 878 F. Supp. 153, 156 (E.D. Mo. 1995). "The relevant definition of bad faith or malice . . . ordinarily contains a requirement of actual intent to cause injury." *Twiehaus*, 706 S.W.2d at 447. "Notwithstanding the apparent requirement that a wrongful intent be pleaded, it is arguable that a further inquiry is necessary to determine whether the factual allegations of the pleadings give rise to an inference of bad faith." *Id.*

> A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another. An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others. . . . [B]ad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a

dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.

*Id.* (internal quotation marks and citations omitted).

Under this standard, the allegations in Laney's amended complaint state facts from which it could reasonably be inferred that Boyher acted in bad faith or with malice by spraying pepper spray directly in Laney's face using a fogger-type apparatus without warning despite Laney having his hands in the air, backing away from an officer in a slow manner, and not being engaged in any unlawful activity. At this stage of the proceedings and on the allegations pled in the amended complaint, Laney's state-law claims against Boyher are not barred by the official immunity doctrine.

### 3. *Punitive Damages*

Laney concedes that he cannot recover punitive damages against the City on his state-law claims. *See* Mo. Rev. Stat. § 537.610.3; *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981). Because Laney's claims against Boyher in his official capacity are equivalent to claims against the City itself, Laney is likewise barred from recovering punitive damages from Boyher in his official capacity. Accordingly, I will strike Laney's requests for punitive damages on his state-law claims against the City and against Boyher in his official capacity only.

### D. <u>Alternative Motion to Strike</u>

Defendants move to strike paragraphs 13-17, 19-20, 29-31, and 52-56 of the

amended complaint as immaterial and impertinent. These paragraphs allege facts concerning the *Stockley* verdict, the nature of public protests in response thereto, and prior orders of this court in separate lawsuits concerning SLMPD actions in response to public protests.

"'To prevail on a motion to strike, the movant must clearly show that the challenged matter has no bearing on the subject matter of the litigation and that its inclusion will prejudice the defendants.'" *Aldridge*, 2019 WL 1695982, at *15 (quoting 2 James W. Moore, et al., *Moore's Federal Practice* §12.37[3] (3rd ed. 2018)). "Immaterial claims are those lacking essential or important relationships to the claim for relief. Impertinent claims are those that do not pertain to the issues in question." *Simms v. Chase Student Loan Servicing, LLC*, 2009 WL 943552, at *2 n.3 (E.D. Mo. Apr. 6, 2009) (internal citations omitted). Viewing the challenged paragraphs against the backdrop of the amended complaint as a whole and considering the nature of Laney's claims, I find that the challenged paragraphs are relevant to Laney's claims and pertain to the particular issues raised.

The challenged paragraphs are neither immaterial nor impertinent, and I will deny defendants' alternative motion to strike.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' Motion to Dismiss Amended Complaint and Alternative Motion to Strike [25] is **GRANTED** only as to the failure to train claim included in Count 2 (the remainder of Count 2 survives

dismissal) and as to the claims of punitive damages on the state-law claims, and is otherwise **DENIED**. The City of St. Louis and Lieutenant Scott Boyher shall file their answer to the amended complaint within the time prescribed by the federal rules.

The case will be set for a Rule 16 scheduling conference by separate Order.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 10th day of June, 2019.