**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DEREK LANEY | ) | |
| | ) | |
|    Plaintiff, | ) | Cause No.: 4:18-cv-01575-CDP |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| CITY OF SAINT LOUIS, MISSOURI, | ) | |
| LT. SCOTT BOYHER, in his individual, | ) | |
| LT. COL. LAWRENCE O'TOOLE, in his | ) | |
| individual capacity, and DIRECTOR | ) | |
| CHARLENE DEEKEN, | ) | |
| in her individual capacity, | ) | |
| | ) | |
|    Defendants. | ) | |

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO**
**PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendants City of St. Louis, Lt. Scott Boyher, Lt.Col. Lawrence O'Toole, and Charlene Deeken file this answer and affirmative defenses to Plaintiff's Second Amended Complaint. Any averment of fact that is not expressly admitted herein is denied.  Defendants deny the introductory statement in the Second Amended Complaint and state that it does not conform to Rule 8(d)(1), F.R.Civ.P.

JURISDICTION AND VENUE

1.      Plaintiff brings this claim pursuant to 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and the First and Fourth Amendments, as incorporated as against States and their municipal divisions through the Fourteenth Amendment.

**ANSWER:    Paragraph 1 states no allegations of fact requiring no response. To the extent a response is required, Defendants admit that Plaintiff brings this action under 42. U.S.C. § 1983, but denies the apparent allegation of a direct action under the First, Fourth, and**

2.     The jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1331 because Plaintiff's action arises under the Constitution of the United States and § 1343(a)(3) to redress the deprivation of rights secured by the Constitution of the United States.

**ANSWER:   Paragraph 2 states no allegations of fact, requiring no response. To the extent a response is required, Defendants admit that this Court has jurisdiction.**

3.     Venue is proper in the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in the City of St. Louis.

**ANSWER:   Paragraph 3 states no allegations of fact, requiring no response. To the extent a response is required, Defendants admit that venue is proper.**

4.     Divisional venue is proper in the Eastern Division because a substantial part of the events leading to the claims for relief arose in the City of St. Louis and Defendants reside in the Eastern Division. E.D. Mo. L.R. 2.07(A)(1), (B)(1).

**ANSWER:   Paragraph 4 states no allegations of fact, requiring no response. To the extent a response is required, Defendants admit that venue is proper.**

5.     This Court has supplemental jurisdiction over the included Missouri state law claims pursuant to 28 U.S.C. §1367.

**ANSWER:   Paragraph 5 states no allegations of fact, requiring no response. To the extent a response is required, Defendants deny paragraph 5's allegations.**

6.     Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

**ANSWER:   Defendants admit that Plaintiff has requested a jury trial.  Defendants join the request.**

## PARTIES

7.     Defendant the City of St. Louis, Missouri (hereinafter, "City of St. Louis") is a

2

first class city, and a political subdivision of the State of Missouri duly organized under the Constitution of Missouri.

**ANSWER:      Defendants admit that the City of St. Louis is a constitutional charter City organized and existing under the laws of the State of Missouri, but deny all other allegations of paragraph 7.**

8.      The St. Louis Metropolitan Police Department ("SLMPD") is an instrumentality of the City of St. Louis, Missouri organized and controlled pursuant to the Statutes of the State of Missouri.

**ANSWER:    Defendants admit that the Division of Police is a division or agency of the City of St. Louis and is commonly known as the St. Louis Metropolitan Police Department, and that the Division of Police operates in accordance with law as a division within City government, but deny all other allegations of paragraph 8.**

9.      The Public Facilities Protection Corporation of the City of St. Louis insures the SLMPD.

**ANSWER:   Defendants deny the allegations of paragraph 9.**

10.      Scott Boyher is employed as a police officer with the SLMPD. Mr. Boyher has the rank of lieutenant. Mr. Boyher was on the ground supervising SLMPD officers during the events of September 15, 2017. He unlawfully pepper sprayed Plaintiff.

**ANSWER:    Defendants admit that Lt. Boyher is a lieutenant with the Division of Police of the City and that he supervised officers of the Bicycle Response Team on September 15, 2017. Defendants deny paragraph 10's remaining allegations.**

11.      Defendant Lawrence O'Toole was employed as a Lt. Colonel with the SLMPD during the events of September 15, 2017. On that date, he was the acting Chief of Police and, along with Defendant Charlene Deeken, was responsible for all management and direction of the SLMPD. Defendant O'Toole knew or should have known that there was no legal justification to use force against Plaintiffs. Defendant O'Toole is a department

head and is covered by Article VIII, Section 5 of the Charter of the City of St. Louis. Defendant O'Toole is sued in his individual capacity.

**ANSWER:** **Defendants admit that defendant Lt. Colonel O'Toole was employed by the Division of Police on September 15, 2017 and acting as Chief of Police. Defendants deny paragraph 11's remaining allegations.**

12. Defendant Charlene Deeken is employed as the Director of Public Safety for the City of St. Louis and was so employed during the events of September 15, 2017. SLMPD is a subdivision of the St. Louis Department of Public Safety. As such, she was the direct supervisor of Defendant O'Toole. On September 57, 2017, Defendant Deeken and Defendant O'Toole were responsible for all management and direction of the SLMPD. Defendant Deeken is a department head and is covered by Article VIII, Section 5 of the Charter of the City of St. Louis. Defendant Deeken is sued in her individual capacity.

**ANSWER:** **Defendants admit Charlene Deeken was employed as the Acting Director of Public Safety for the City of St. Louis on September 15, 2017. Defendants deny all remaining allegations of paragraph 12.**

13. Plaintiff is a resident of the City of St. Louis.

**ANSWER:** **Defendants are without sufficient information to form a belief as to the truth of paragraph 13's allegations, and therefore deny the same.**

## FACTS

14. On Friday, September 15, 2017, after a four-day bench trial, a Missouri Circuit Court Judge acquitted Officer Jason Stockley of the first-degree murder of Anthony Lamar Smith. *See* Exh. A, Stockley Verdict.

**ANSWER:** **Defendants admit the allegations of paragraph 14 and the accuracy of the referenced exhibit A.**

15. This acquittal shocked many in the St. Louis community as an audio recording

4

submitted into evidence in the trial captured Officer Stockley saying "we're killing this motherfucker, don't you know" in reference to Mr. Smith. *Id*. at 5.

**ANSWER:** **Defendants are without sufficient information to form a belief as to the truth of how anyone in particular reacted to the verdict or why they reacted, and therefore deny the same.**

16.    Further, evidence showed that during the incident Officer Stockley was in possession of an assault rifle that had not been issued to him by the SLMPD. *Id*. at 23.

**ANSWER:** **Defendants admit that exhibit A contains a finding regarding an assault rifle.**

17.    In addition, Officer Stockley claimed to find a gun in Mr. Smith's car after he killed Mr. Smith. *Id*. at 25.

**ANSWER:** **Defendants admit that exhibit A contains a finding that Officer Stockley found a gun in the deceased drug dealer's car.**

18.    Only Officer Stockley's DNA was found on the gun, leading many, including the Circuit Attorney of the City of St. Louis, to believe that Stockley planted the gun on Mr. Smith after Mr. Smith's death, in an effort to justify the killing. *Id*. at 12.

**ANSWER:** **Defendants lack sufficient knowledge and information to admit the allegations of paragraph 18, which are in any event immaterial to this action.**

19.    At trial, Officer Stockley's partner did not testify in Stockley's defense. Rather, the partner invoked his Fifth Amendment right against self-incrimination.

**ANSWER:** **Defendants lack sufficient knowledge and information to admit the allegations of paragraph 19, which are in any event immaterial to this action.**

20.    Following the announcement of the Stockley Verdict, public protests began at multiple locations in St. Louis and surrounding communities.

**ANSWER:** **Defendants admit paragraph 20's allegations.**

21.    To many in the St. Louis community, Officer Stockley's acquittal was yet another example of white St. Louis-area police officers killing African-American citizens

5

**ANSWER:**   **Defendants lack sufficient knowledge and information to admit the allegations of paragraph 21.**

22.    Further, in the view of the protestors, the acquittal further supported their view that the American criminal justice system does not believe that Black lives matter.

**ANSWER:**   **Defendants lack sufficient knowledge and information to admit the allegations of paragraph 22.**

23.    In response to the protests, St. Louis Metropolitan police officers amassed at several protests wearing military-like tactical dress, helmets, batons, and full-body riot shields  and carrying chemicals, such as tear gas, skunk, inert smoke, pepper gas, pepper pellets, xylyl bromide, and/or similar substances (collectively, "chemical agents").

**ANSWER:**   **Defendants admit that, in response to threats of civil disorder, police officers were deployed at various locations, but Defendants deny that all such officers were fully equipped with riot gear or chemical agents; Defendants deny all other allegations of paragraph 23.**

24.    This is in stark contrast to SLMPD's appearance at a multitude of other un- permitted protests where the police themselves are not the target of the protest, including an anti- Donald Trump march on November 13, 2016, the St. Louis Women's March on January 21, 2017, the St. Louis LGBTQIA March and Rally on February 22, 2017, and the St. Louis March for Science on April 22, 2017.

**ANSWER:**    **Defendants deny paragraph 24's allegations.**

25.    Virtually all of the protests were non-violent.

**ANSWER:**    **Defendants deny paragraph 25's allegations.**

26.    On three occasions, a handful of protesters committed minor property damage, including broken windows and broken flower pots.

**ANSWER:**    **Defendants admit that protests became violent and protesters engaged in acts**

of assault and vandalism in September 2017 in the City of St. Louis; defendants deny all other allegations of paragraph 26.

27.     During the Stockley protests, SLMPD police officers *without warning* deployed chemical agents against individuals observing, recording, or participating in protest activity, including but not limited to the following:

a.     The afternoon of Friday, September 15, 2017, near the intersection of Clark and Tucker Avenues.

b.     The evening of Friday, September 15, 2017, near the intersection of McPherson and Euclid Avenues

c.     The evening of Friday, September 15, 2017, near the intersection of Waterman and Kingshighway Boulevards.

d.     The evening of Friday, September 15, 2017, near the intersection of Lindell and Euclid Avenues.

e.     The evening of Friday, September 15, 2017, near the intersection of Euclid and Maryland Avenues.

f.     The evening of Friday, September 15, 2017, near the intersection of Lindell and Kingshighway Boulevards.

g.     The evening of Friday, September 15, 2017, near the intersection of Euclid Avenue and Pershing Place.

h.     The evening of Friday, September 15, 2017, on Hortense Place.

i.     The evening of Sunday, September 17, 2017, near the intersection of Tucker Boulevard and Washington Avenue.

j.     The evening of September 29, 2017 outside of Busch Stadium.

**ANSWER:     Defendants admit that in responding to illegal conduct by persons engaged in disorderly protests and other group actions in September 2017 in the City of St. Louis, some police officers utilized chemical agents in a reasonable and lawful manner; Defendants**

7

28.     These incidents are consistent with the pattern and practice of SLMPD of indiscriminately using chemical agents without warning.

**ANSWER:    Defendants deny paragraph 28's allegations.**

29.     In October 2014, SLMPD fired chemical agents at protestors on South Grand.

**ANSWER:    Defendants deny paragraph 29's allegations.**

30.     In November 2014, SLMPD officers fired chemical agents at protestors on South Grand as well as into a business where peaceful protestors had congregated. SLMPD officers refused to allow the protestors to leave

**ANSWER:    Defendants deny paragraph 30's allegations.**

31.     On December 11, 2014, a federal judge in this District issued a temporary restraining order enjoining the SLMPD from enforcing any rule, policy, or practice that grants law enforcement officials the authority or discretion to:

(1)     utilize tear gas, inert smoke, pepper gas, or other chemical agents (collectively, "chemical agents") for the purpose of dispersing groups of individuals who are engaged in peaceful, non-criminal activity in the City of St. Louis or in the County of St. Louis

        (a)     without first issuing clear and unambiguous warnings that such chemical agents will be utilized;
        (b)     without providing the individuals sufficient opportunity to heed the warnings and exit the area;
        (c)     without minimizing the impact of such chemical agents on individuals who are complying with lawful law enforcement commands; and
        (d)     without ensuring that there is a means of safe egress from the area that is available to the individuals; and

(2)     utilize chemical agents on individuals engaged in peaceful, non-criminal activity in the City of St. Louis or in the County of St. Louis for the purpose of frightening them or punishing them for exercising their constitutional rights.

*See* Exh. B, Temporary Restraining Order in *Templeton v. Dotson*, No. 4:14-cv-02019 (E.D. Mo. Dec. 11, 2014) at 3.

**ANSWER:   Defendants admit that an order was entered as reflected in Exhibit B and that a portion of that order is quoted in paragraph 31; Defendants deny all other allegations of paragraph 31.**

32.     The City entered into a settlement agreement on March 25, 2015, where it agreed as follows:

**A.**     Defendants and their agents, servants, employees, and representatives, will not enforce any rule, policy, or practice that grants law enforcement officials the authority or discretion to:

(1)     utilize tear gas, inert smoke, pepper gas, or other chemical agents (collectively, "chemical agents") for the purpose of dispersing groups of individuals who are engaged in non-criminal activity:

(a)     without first issuing clear and unambiguous warnings that such chemical agents will be utilized;

(b)     without providing the individuals sufficient opportunity to heed the warnings and exit the area;

(c)     without reasonably attempting to minimize the impact of such chemical agents on individuals who are complying with lawful law enforcement commands; and

(d)     without ensuring that there is a means of safe egress from the area that is available to the individuals and announcing this means of egress to the group of individuals.

(2)     utilize chemical agents on individuals engaged in non-criminal activity for the purpose of frightening them or punishing them for exercising their constitutional rights.

**B.**     Provided, however, that Paragraph A hereof shall not be applicable to situations that turn violent and persons at the scene present an imminent threat of bodily harm to persons or damage to property, and when law enforcement officials must defend themselves or other persons or property against such imminent threat.

*See* Exh. C, Settlement Agreement in *Templeton v. Dotson*, No. 4:14-cv-02019 (E.D. Mo. Mar. 25, 2015) at 1-2.

**ANSWER:   Defendants admit that the City of St. Louis and other governmental entities entered into a consent decree in settlement of claims in the case styled *Templeton v. Dotson, et al*., as reflected in Exhibit C and that a portion of the consent decree is quoted in paragraph 32; Defendants object to allegations pertaining to a settlement agreement as a basis for a complaint and Defendants deny all other allegations of paragraph 32.**

9

33.     Less than two months after entering into this Consent Decree, SLMPD began to violate the Decree.

**ANSWER: Defendants deny paragraph 33's allegations.**

34.     On May 19, 2015, in response to protests over the St. Louis Circuit Attorney's office's refusal to charge another SLMPD officer for killing another African-American man, SLMPD officers deployed chemical agents against peaceful, non-criminal protestors  without warning. *See* Exh. D, Transcript of Testimony, Volume 1, *Ahmad v. St. Louis*, No. 4:17-cv-02455 (E.D. Mo. Oct. 18, 2017) at 69.

**ANSWER:    Defendants admit that Exhibit D is a transcript of testimony in the proceeding described in paragraph 34, but Defendants otherwise deny the allegations of paragraph 34.**

35.     On August 19, 2015, a protest occurred because SLMPD officers killed another African-American man in the Fountain Park neighborhood. According to the testimony of Sarah Molina, a local attorney, SLMPD officers indiscriminately used chemical agents without giving an audible and intelligible warning at the intersection of Walton Avenue and Page Boulevard. *Id*. at 50-52. Molina testified that SLMPD officers fired chemical agents at her without giving her an opportunity to leave. *Id.* SLMPD officers continued using chemical agents against people fleeing the area and even fired chemical agents at people peacefully standing on or in their own properties. *Id.* Thirty minutes after the protests had dissipated, SLMPD officers returned and fired chemical agents at Ms. Molina, who was standing on property that she owns. *Id.*

**ANSWER:    Defendants deny paragraph 35's allegations.**

36.     On July 21, 2017, SLMPD officers used chemical agents against people protesting the treatment of detainees in the St. Louis City Workhouse. *Id.* at 71, 91. Although a few people did engage in unlawful activity earlier in the night, SLMPD officers pepper sprayed numerous people, none of whom were involved in criminal activity or were even at the same location as the criminal activity. These protesters were engaged in non-violent

protesting when SLMPD officers sprayed them with chemical agents. *Id.*

**ANSWER: Defendants admit that a group of violent persons attempted to invade the premises of a correctional facility known as the Medium Security Institution of the City of St. Louis in July 2017, and that reasonable and lawful measures were taken by police officers to protect themselves and the facility; Defendants otherwise deny the allegations of paragraph 36.**

37. Defendants' action in the instant matter follows the same script whereby SLMPD officers violate the Constitutional rights of people expressing their First Amendment right to protest against the police. Defendants' pattern and practice of illegally arresting and using chemical munitions against peaceful citizens is not only well-documented, but is detailed in *Ahmad* and *Templeton*.

**ANSWER: Defendants deny paragraph 37's allegations.**

38. This pattern and practice of utilizing chemical agents on individuals engaged in peaceful, non-criminal activity continued on September 15, 2017.

**ANSWER: Defendants deny paragraph 38's allegations.**

39. That day, Mr. Laney joined his fellow citizens downtown to protest the "not guilty" verdict in the Jason Stockley case.

**ANSWER: Defendants are without sufficient knowledge and information to form a belief as to the truth of paragraph 39's allegations and therefore deny the same.**

40. Mr. Laney witnessed a group of women lock arms with each other in front of a bus that was being used by the police department.

**ANSWER: Defendants are without sufficient knowledge and information to form a belief as to the truth of the allegation as to what plaintiff witnessed and therefore deny the paragraph 40's allegations.**

41. One of the women later stated that the women saw that the buses were filled with SLMPD officers who were dressed as if they were going to war. The woman decided to surround

the bus in attempt to protect other protestors, including persons of color, who the women thought would be targeted by the militarized police. The women believed that they would not be treated roughly due to their gender. They were wrong.

**ANSWER**: **Defendants admit that on September 15, 2017, a group of persons illegally impeded traffic, blockaded buses, and refused lawful orders to disperse; defendants deny all other allegations of paragraph 41.**

42.     Mr. Laney observed SLMPD officers using bicycles "as weapons" to hit the female protesters.

**ANSWER**: **Defendants deny paragraph 42's allegations.**

43.     Mr. Laney was bothered that the police were using force against peaceful protestor and that the force was being applied to defenseless women.

**ANSWER**: **Defendants deny the allegations of paragraph 43.**

44.     A video of the incident shows Mr. Laney complaining to an officer about the treatment of the female protesters.

**ANSWER**: **Defendants deny paragraph 44's allegations.**

45.     In response to Mr. Laney's complaint, the officer used the officer's bicycle to push Mr. Laney backward.

**ANSWER**: **Defendants deny the allegations of paragraph 45.**

46.     Mr. Laney immediately placed his hands in the air and began to back away from the officer slowly.

**ANSWER**: **Defendants deny the allegations of paragraph 46.**

47.     As Mr. Laney was retreating from the first officer's physical assault with the officer's bicycle, Lt. Boyher came from behind Mr. Laney and pepper sprayed Mr. Laney in the face.

48.     The cloud of red spray came from a "big defogger" of approximately one foot in length.

**ANSWER:     Defendants deny paragraph 48's allegations.**

49.     Lt. Boyher did not give Mr. Laney any warning or make any attempt to arrest Mr. Laney.

**ANSWER:     Defendants deny paragraph 49's allegations.**

50.     Lt. Boyher just blasted Mr. Laney and then ran away, leaving Mr. Laney to suffer.

**ANSWER:     Defendants deny paragraph 50's allegations.**

51.     The pepper spray worked as intended as Mr. Laney began to feel excruciating pain. His eyes began to burn. Mucus ran from his nose. His breathing became labored. These reactions persisted for 24 hours.

**ANSWER:     Defendants deny paragraph 51's allegations.**

52.     Two weeks later in response to the deployment of pepper spray against another set of peaceful protestors, SLMPD released a statement that read in part, "Officers deploy tactics when criminal activity arises and escalation depends on the level of aggression. […] Pepper spray is a non-lethal tool used when unlawful behavior occurs to protect life and property."

**ANSWER:     Defendants deny paragraph 52's allegations.**

53.     This statement contradicts the SLMPD's use of pepper against Plaintiff. Plaintiff was not engaged in any unlawful behavior that required pepper spraying. No life or property was in danger when SLMPD pepper sprayed Plaintiff.

**ANSWER:     Defendants deny paragraph 53's allegations.**

54.     On November 15, 2017, a judge in this District barred SLMPD from using many

13

of the tactics described in this complaint. *See* Exh. I, Memorandum and Order of Preliminary Injunction, *Ahmad v. St. Louis*, No. 4:17-cv-02455 (E.D. Mo. Nov. 15, 2017).

**ANSWER: Defendants admit that an order was entered as reflected in Exhibit I. Defendants otherwise deny paragraph 54's allegations.**

55. The Court found that "[p]rotest activity began shortly after the announcement of the verdict on the morning of September 15, 2017. Protesters assembled in front of the state courthouse downtown near Tucker and Market streets. They did not have a permit to protest because the City of St. Louis does not require, and will not provide, a permit for protests." *Id.* at 2.

**ANSWER: Defendants admit that Exhibit I is quoted in part in paragraph 55, but Defendants deny all other allegations and conclusions of paragraph 55.**

56. In an attempt to defend the SLMPD's actions, the City's attorney "stated during closing arguments that 'the police have the right to tell people, at this point, we're done for the evening; there's no – no more assembling; this assembly is over.'" *Id.* at 37. Not surprisingly, the Court did not adopt this rationale as a basis for the arrests and the use of chemical agents.

**ANSWER: Defendants admit that Exhibit I is quoted in part in paragraph 56, but Defendants deny all other allegations and conclusions of paragraph 56.**

57. The Court made the following findings:

a. Plaintiffs are likely to prevail on the merits of their claims that the policies or customs of defendant discussed below violate the constitutional rights of plaintiffs. *Id.* at 35-36.

b. Plaintiffs have presented sufficient evidence demonstrating that they are likely to prevail on their claim that defendant's custom or policy is to permit any officer to declare an unlawful assembly in the absence of the force or violence requirement of St. Louis City Ordinance 17.16.275 and Mo. Rev. Stat. § 574.060, in violation of plaintiffs'

14

First and Fourth Amendment rights. *Id*. at 36.

    c.    Plaintiffs have presented sufficient evidence for purposes of awarding preliminary injunctive relief that defendant's custom or policy of committing discretionary authority to police officers to declare unlawful assemblies in the absence of any threat of force or violent activity provides no notice to citizens of what conduct is unlawful, and it permits officers to arbitrarily declare "there's no more assembling." *Id*. at 37-38. Plaintiffs have presented sufficient evidence at this stage of the proceedings that this discretion was in fact exercised in such a manner in violation of plaintiffs' constitutional rights. *Id*.

    d.    Similarly, Plaintiffs have presented sufficient evidence demonstrating that they are likely to prevail on their claim that defendant's custom or policy is to permit officers to issue vague dispersal orders to protesters exercising their first amendment rights in an arbitrary and retaliatory way and then to enforce those dispersal orders without sufficient notice and opportunity to comply before being subjected to uses of force or arrest, in violation of Plaintiffs' First and Fourth Amendment rights. *Id*. at 39.

    e.    Plaintiffs presented sufficient, credible evidence for purposes of awarding preliminary injunctive relief that defendant has a custom or policy, in the absence of exigent circumstances, of issuing dispersal orders to citizens engaged in expressive activity critical of police which are either too remote in time and/or too vaguely worded to provide citizens with sufficient notice and a reasonable opportunity to comply, inaudible and/or not repeated with sufficient frequency and/or by a sufficient number of officers to provide citizens with sufficient notice and a reasonable opportunity to comply, contradictory and inconsistent, not uniformly enforced, and retaliatory. *Id*. at 40.

    f.    Plaintiffs have also presented sufficient evidence demonstrating that they are likely to prevail on their claim that defendant has a custom or policy of using chemical agents without warning on citizens engaged in expressive activity that is critical of police or who are recording police in retaliation for the exercise of their first amendment rights,

in violation of the First, Fourth, and Fourteenth Amendments. *Id.* at 41.

g.      The City's custom or policy of authorizing the use of hand-held mace against non-violent protesters with no warning or opportunity to comply and in the absence of probable cause or exigent circumstances impermissibly circumvents the protections afforded by the *Templeton* settlement agreement and vests individual officers with unfettered discretion to exercise that authority in an arbitrary and retaliatory manner in violation of constitutional rights. *Id.* at 43-44.

h.      Plaintiffs' evidence — both video and testimony — shows that officers have exercised their discretion in an arbitrary and retaliatory fashion to punish protesters for voicing criticism of police or recording police conduct. When all of the evidence is considered, plaintiffs have met their burden of showing that they are likely to succeed on their claim that defendant has a custom or policy of deploying hand held pepper spray against citizens engaged in recording police or in expressive activity critical of police in

retaliation for the exercise of their first amendment rights, in violation of the First, Fourth, and Fourteenth Amendments. *Id.* 44.

i.      Plaintiffs have also presented sufficient evidence at this preliminary stage of the proceedings that the aforementioned customs or policies of defendant caused the violations of plaintiff's constitutional rights. *Id.* 44. That is because "it is well-settled law that a loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" and "it is always in the public interest to protect constitutional rights." *Phelps-Roper v. Nixon*, 545 F.3d 685, 691 (8th Cir. 2008) (internal quotation marks and citations omitted), overruled on other grounds, *Phelps-Roper v. City of Manchester, Mo.*, 697 F.3d 678 (2012). *Id.* 44-45.

**ANSWER: Defendants admit that Exhibit I is quoted in part by paragraph 57, but Defendants otherwise deny the allegations and conclusions of paragraph 57 and each of its subparts.**

58. Upon information and belief, senior officials of the SLMPD, including Defendant Boyher were directing such actions and conduct and/or tacitly accepting and encouraging such conduct by not preventing officers from engaging in such conduct and by not disciplining them when they did engage in such actions and conduct.

**ANSWER:  Defendants deny the allegations and conclusions of paragraph 58.**

## COUNT I

59. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

**ANSWER:  Defendants incorporate their answers to the incorporated allegations of paragraph 59.**

60. Plaintiff has a fundamental right to assemble and express Plaintiff's views protected by the freedom of association and freedom of speech clauses of the First Amendment, as applied to the states under the Fourteenth Amendment to the United States Constitution.

**ANSWER:  Defendants admit that all citizens have a fundamental right to speak and to assemble, subject to reasonable time, place, and manner regulations; defendants otherwise deny the conclusions of paragraph 60.**

61. Defendant's actions violated Plaintiff's rights under the First Amendment to freedom of speech and freedom of assembly by interfering with Plaintiff's ability to associate freely in public and express Plaintiff's views as part of a peaceful demonstration.

**ANSWER:  Defendants deny paragraph 61's allegations.**

62. Observing and recording public protests, and the police response to those protests, is also a legitimate means of gathering information for public dissemination that is protected by the freedom of speech and freedom of the press clauses of the First Amendment, as applied to the states under the Fourteenth Amendment to the United States Constitution.

**requiring no response. To the extent a response is required, denied.**

63.     Defendant's actions violated Plaintiff's First Amendment rights to freedom of the press and freedom of speech by interfering with Plaintiff's ability to gather information and cover a matter of public interest.

**ANSWER:     Defendants deny paragraph 63's allegations.**

64.     Defendant engaged in these unlawful actions willfully and knowingly, acting with reckless or deliberate indifference to Plaintiff's First Amendment rights.

**ANSWER:     Defendants deny paragraph 64's allegations.**

65.     As a direct and proximate result of Defendant's unlawful actions described herein, Plaintiff suffered damages including: physical injury, emotional trauma, great concern for Plaintiff's own safety; fear, apprehension, depression, anxiety, consternation and emotional distress.

**ANSWER:     Defendants deny paragraph 65's allegations.**

66.     Additionally, Defendant's actions described herein have had a chilling effect on Plaintiff, who is now less likely to participate in free public discourse.

**ANSWER:     Defendants deny paragraph 66's allegations.**

67.     At all times, Defendant was acting under color of state law.

**ANSWER:  Paragraph 67 asserts a legal conclusion rather than an allegation of fact requiring no response. To the extent a response is required, denied.**

68.     If Plaintiff prevails, Plaintiff is entitled to recover attorneys' fees pursuant to 42 U.S.C. § 1988.

**ANSWER:   Defendants admit that 42 U.S.C. §1988 allows an award of fees in certain cases; otherwise defendants' deny the allegations of paragraph 68.**

**COUNT II**

18

69.     Plaintiff incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

**ANSWER:     Defendants incorporate their answers to the incorporated allegations of paragraph 69.**

70.     Defendant City is liable to Plaintiff pursuant to 42 U.S.C. § 1983 for the other Defendants' violation of Plaintiff's rights because the violations were caused by a policy, practice, or custom of the St. Louis Metropolitan Police Department. Among the SLMPD policies, practices, or customs that caused constitutional harm to Plaintiff are the following:

a.     SLMPD officers' routine use of excessive force when policing protests, especially those at which police brutality is being protested;

b.     SLMPD's policy or custom of issuing vague and even contradictory dispersal orders without giving an opportunity to comply;

c.     SLMPD's policy of arbitrarily declaring unlawful assemblies in the absence of any threat or force or violent activity that provides no notice to citizens or unlawful conduct;

d.     Additionally, SLMPD has a custom, policy, or practice of violating the Fourth Amendment by regularly conducting unreasonable seizures and arresting individuals without probable cause.

**ANSWER: Defendants deny the allegations contained in paragraph 70 and each of its subparts.**

71.     Further, Defendant City has inadequately trained, supervised, and disciplined SLMPD officers, with respect to its officers' use of force.

**ANSWER:     Defendants deny paragraph 71's allegations.**

72.     Defendant City had notice that its use of force training and officer supervision was inadequate and likely to result in constitutional violations based on multiple incidents of excessive force against protestors in October 2014, November 2014, July 2015, August 2015,

and September 2017.

**ANSWER:**   **Defendants deny paragraph 72's allegations.**

73.     Despite Defendant City's March 2015 *Templeton* settlement agreement, SLMPD officers continue to use chemical agents against non-violent citizens, illustrating Defendant City's deliberate and conscious choice to maintain training and supervision practices that give rise to constitutional violations.

**ANSWER:**   **Defendants deny paragraph 73's allegations.**

74.     Even after the *Templeton* settlement and the incidents that gave rise to it, Defendant City did not initiate or require comprehensive retraining of its officers, despite repeated, similar constitutional violations perpetrated by SLMPD officers after that settlement and before the incident at issue in this case.

**ANSWER:**   **Defendants deny paragraph 74's allegations.**

75.     In its failures, Defendant City has been deliberately indifferent to the rights of citizens, and these failures and policies are the moving force behind, and direct and proximate cause of, the constitutional violations suffered by Plaintiff as alleged herein.

**ANSWER:**   **Defendants deny paragraph 75's allegations.**

76.     As a direct result of the Defendant City's failures and policies as described herein, Plaintiff suffered damages including: physical injury, fear, apprehension, and concern for Plaintiff's own safety.

**ANSWER:**   **Defendants deny paragraph 76's allegations.**

77.     If Plaintiff prevails, Plaintiff is entitled to recover attorneys' fees pursuant to 42 U.S.C. § 1988.

**ANSWER:**   **Defendants admit that 42 U.S.C. §1988 allows an award of fees in certain cases; otherwise defendants' deny the allegations of paragraph 68.**

**<u>COUNT III</u>**

78.     Plaintiff incorporates by reference the allegations in the foregoing paragraphs of

this Complaint as if fully set forth herein.

**ANSWER:** **Defendants incorporate their answers to the allegations incorporated in paragraph 78.**

79. The brandishing and deployment of chemical agents for no lawful reason by Defendant caused Plaintiff to experience apprehension of immediate physical injury.

**ANSWER:** **Defendants deny paragraph 79's allegations.**

80. As a direct result of the conduct of Defendant described herein, Plaintiff suffered damages including: apprehension, fear, concern for Plaintiff's own safety, and physical injury.

**ANSWER:** **Defendants deny paragraph 80's allegations.**

81. Defendant City of St. Louis obtains insurance from the Public Facilities Protection Corporation, a not for profit corporation into which the City pays funds yearly. The funds are later disbursed by the corporation to pay claims against the City.

**ANSWER:** **Defendants deny paragraph 81's allegations and conclusions**

82. Alternatively, the City's relationship with the PFPC serves as a self-insurance plan. The 2017 Comprehensive Annual Financial Report for the City of St. Louis, Missouri states "[t]he PFPC is reported as if it were part of the primary government because its sole purpose is to provide the City with a defined and funded self-insurance program for claims, judgments, and other related legal matters . . .."

**ANSWER:** **Defendants deny paragraph 82's allegations and conclusions**

83. By possessing such insurance or self-insurance, the City has waived sovereign immunity on state claims pursuant to § 537.610.1, RSMo.

**ANSWER:** **Defendants deny paragraph 83's allegations and conclusions**

84. The actions of Defendant Boyher as described above were carried out in bad faith and with malice, and done with actual, wanton intent to cause injury, such that punitive damages should be awarded to punish Defendant Boyher and to deter him, as well as other similarly-situated individuals, from engaging in similar conduct in the future, in an amount to be determined by a

**ANSWER:** Defendants deny paragraph 84's allegations.


## COUNT IV

85.     Plaintiff incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

**ANSWER:**     **Defendants incorporate their answers to the allegations incorporated in paragraph 85.**

86.     By assaulting Plaintiff and spraying Plaintiff in the face at point-blank range with a chemical agent, Defendants committed acts that rose to the level of extreme or outrageous conduct that goes beyond the possible bounds of decency, so as to be regarded as atrocious and utterly intolerable in a civilized community.

**ANSWER:**     **Defendants deny paragraph 86's allegations.**


87.     Defendants' actions were intentional or, at best, reckless.

 **ANSWER:**     **Defendants deny paragraph 87's allegations.**


88.     Such actions by Defendants have caused Plaintiff severe emotional distress that has resulted in bodily harm, as described above.

**ANSWER:**     **Defendants deny paragraph 88's allegations.**

89.     Defendants' sole motivation was to cause emotional distress to Plaintiff and the other people Defendants' unlawfully arrested.

**ANSWER:**     **Defendants deny paragraph 89's allegations.**

90.     As a direct result of the conduct of Defendants described herein, Plaintiff suffered damages including: physical injury, emotional trauma, great concern for Plaintiff's own safety; fear, apprehension, depression, anxiety, consternation and emotional distress; lost time; loss of

employment opportunity, and loss of faith in society.

**ANSWER:   Defendants deny paragraph 90's allegations.**

91.     Defendant City of St. Louis obtains insurance from the Public Facilities Protection Corporation, a not for profit corporation into which the City pays funds yearly. The funds are later disbursed by the corporation to pay claims against the City.

**ANSWER:   Defendants deny paragraph 91's allegations and conclusions.**

92.     Alternatively, the City's relationship with the PFPC serves as a self-insurance plan. The 2017 Comprehensive Annual Financial Report for the City of St. Louis, Missouri states "[t]he PFPC is reported as if it were part of the primary government because its sole purpose is to provide the City with a defined and funded self-insurance program for claims, judgments, and other related legal matters . . .."

**ANSWER:   Defendants deny paragraph 92's allegations and conclusions.**

93.     By possessing such insurance or self-insurance, the City has waived sovereign immunity on state claims pursuant to § 537.610.1, RSMo.

**ANSWER:   Defendants deny paragraph 93's allegations and conclusions.**

94.     The actions of Defendant Boyher as described above were carried out in bad faith and with malice, and done with actual, wanton intent to cause injury, such that punitive damages should be awarded to punish Defendant Boyher and to deter him, as well as other similarly-situated individuals, from engaging in similar conduct in the future, in an amount to be determined by a jury.

**ANSWER:   Defendants deny paragraph 94's allegations.**

95.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

**ANSWER:**   **Defendants incorporate their answers to the allegations incorporated in paragraph 95.**

96.    Alternative to Count VII, above, by assaulting Plaintiff and spraying Plaintiff with pepper spray in the face at point-blank range, Defendants realized or should have realized that their conduct posed an unreasonable risk to Plaintiff.

 **ANSWER:**   **Defendants deny paragraph 96's allegations.**

97.    Further, Plaintiff was reasonably in fear for Plaintiff's own person because of the actions of Defendants and suffered emotional distress or mental injury that is medically diagnosable and sufficiently severe to be medically significant as a result of Defendants' actions.

**ANSWER:**   **Defendants deny paragraph 97's allegations.**


98.    Defendant City of St. Louis obtains insurance from the Public Facilities Protection Corporation, a not for profit corporation into which the City pays funds yearly. The funds are later disbursed by the corporation to pay claims against the City.

 **ANSWER:**   **Defendants deny paragraph 98's allegations and conclusions.**

99.    Alternatively, the City's relationship with the PFPC serves as a self-insurance plan. The 2017 Comprehensive Annual Financial Report for the City of St. Louis, Missouri states "[t]he PFPC is reported as if it were part of the primary government because its sole purpose is to provide the City with a defined and funded self-insurance program for claims, judgments, and other related legal matters . . .."

**ANSWER:**   **Defendants deny paragraph 99's allegations and conclusions.**

100.    By possessing such insurance or self-insurance, the City has waived sovereign

**ANSWER:**   Defendants deny paragraph 100's allegations and conclusions.

101.   The actions of Defendant Boyher as described above were carried out in bad faith and with malice, and done with actual, wanton intent to cause injury, such that punitive damages should be awarded to punish Defendant Boyher and to deter him, as well as other similarly-situated individuals, from engaging in similar conduct in the future, in an amount to be determined by a jury.

**ANSWER:**   **Defendants deny paragraph 101's allegations.**

## COUNT VI

102.   Plaintiff incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

**ANSWER:**   **Defendants incorporate their answers to the allegations incorporated in paragraph 102.**

103.   Defendant engaged in these actions willfully and knowingly, acting with reckless or deliberate indifference to the Plaintiff's Fourth Amendment rights. As a direct and proximate result of Defendant's unlawful actions, Plaintiff was damaged.

**ANSWER:**   **Defendants deny paragraph 103's allegations.**

104.   The use of force against Plaintiff, by punitively assaulting Plaintiff with pepper spray, was objectively unreasonable and constituted excessive force.

**ANSWER:**   **Defendants deny paragraph 104's allegations.**

105.   As a direct result of the conduct of Defendant described herein, Plaintiff suffered physical injury and emotional trauma.

**ANSWER:**   **Defendants deny paragraph 105's allegations.**

106.   At all times, Defendant was acting under color of state law.

**ANSWER:   Paragraph 106 asserts a legal conclusion rather than an allegation of fact**

requiring no response. To the extent a response is required, denied.

107.    If Plaintiff prevails, Plaintiff is entitled to recover attorneys' fees pursuant to 42 U.S.C. § 1988.

**ANSWER:  Defendants admit that 42 U.S.C. §1988 authorizes an award of fees in certain cases; defendant otherwise deny the allegations of paragraph 107.**

## COUNT VII

108.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

**ANSWER:      Defendants incorporate their answers to the allegations incorporated in paragraph 108.**

109.    During the process of being unconstitutionally pepper sprayed, Plaintiff suffered battery at the hands of Defendant.

**ANSWER:  Defendants deny paragraph 109's allegations.**

110.    In spraying Plaintiff directly in the face with pepper spray caused further intentional and offensive bodily contact.

**ANSWER:    Defendants deny paragraph 110's allegations.**

111.    Namely, Defendant's physically aggressive tactics caused intentional and offensive bodily harm to Plaintiff.

**ANSWER:    Defendants deny paragraph 111's allegations.**

112.    As a direct result of Defendant's conduct described herein, Plaintiff suffered damages including: physical injury, emotional trauma, great concern for Plaintiff's own safety; fear, apprehension, depression, anxiety, consternation and emotional distress.

**ANSWER:    Defendants deny paragraph 112's allegations.**

113.    Defendant City of St. Louis obtains insurance from the Public Facilities Protection Corporation, a not for profit corporation into which the City pays funds yearly. The funds are later

26

disbursed by the corporation to pay claims against the City.

**ANSWER:**      **Defendants deny paragraph 113's allegations and**

114.      Alternatively, the City's relationship with the PFPC serves as a self-insurance plan. The 2017 Comprehensive Annual Financial Report for the City of St. Louis, Missouri states "[t]he PFPC is reported as if it were part of the primary government because its sole purpose is to provide the City with a defined and funded self-insurance program for claims, judgments, and other related legal matters . . .."

**ANSWER:**      **Defendants deny paragraph 114's allegations and**

115.      By possessing such insurance or self-insurance, the City has waived sovereign immunity on state claims pursuant to § 537.610.1, RSMo.

**ANSWER:**      **Defendants deny paragraph 115's allegations and conclusions.**

116.      The action of Defendant Boyher as described above were carried out in bad faith and with malice, and done with actual, wanton intent to cause injury, such that punitive damages should be awarded to punish Defendant Boyher and to deter him, as well as other similarly-situated individuals, from engaging in similar conduct in the future, in an amount to be determined by a jury.

 **ANSWER:**   **Defendants deny paragraph 116's allegations.**



## COUNT VIII

117.      The Article VIII, Section 5 of the Charter of the City of St. Louis states that "[e]ach head of a department, office or division ***shall*** be responsible for the acts or omissions of officers and employees appointed by him, and may require bonds or other securities from them to secure himself." (Emphasis added).

**ANSWER:**      **Defendants admit that article VIII, §5 of the Charter of the City of St. Louis is quoted in part in paragraph 117; defendants deny all other allegations of paragraph 117.**

27

118. Defendant Boyher is an officer and employee of the Director of Public Safety and the Chief of Police.

**ANSWER:** **Defendants deny the allegations of paragraph 118.**

119. Defendant Boyher was acting in the scope of his employment when he committed the offenses described in Counts I and III-VII.

**ANSWER:** **Defendants admit that defendant Boyher was employed by the City of St. Louis on September 15, 2017; defendants otherwise deny the allegations and conclusions of paragraph 119.**

120. Accordingly, pursuant to Article VIII, Section 5, the Director of Public Safety and the Chief of Police are vicariously liable for the acts and omissions of Defendant Boyher, as described in Counts I and III-VII.

**ANSWER:** **Defendants deny the allegations of paragraph 120**

121. The Director of Public Safety and the Chief of Police are therefore responsible for any damages awarded to Plaintiff as a result of the injuries suffered at the hands of Defendant Boyher, as described above in Counts I and III-VII.

**ANSWER:** **Defendants deny the allegations of paragraph 121.**


## OTHER ANSWERS

**122.** **Defendants deny all allegations of fact contained in the un-numbered "introduction" paragraph to Plaintiff's Second Amended Complaint.**

**123.** **Defendants deny all allegations of fact contained in the "WHEREFORE" clause located after paragraph 121 of Plaintiff's Second Amended Complaint.**

**124.** **Defendants request a jury trial on all issues so triable.**

## AFFIRMATIVE DEFENSES

**125.** **Further answering, Defendants and each of them state that Plaintiff's Second Amended Complaint fails to state a claim upon which relief can be granted in each and every**

126..   Further answering, Defendants and each of them state that all actions of the individual Defendant officers with regard to Plaintiff were taken on the basis of probable cause or arguable probable cause to believe that Plaintiff was violating ordinances or statutes, that Defendants reasonably believed that said defendants' actions were lawful, that no act of Defendants violated any clearly established constitutional right of Plaintiff, and so the individual Defendants are immune from liability by reason of the doctrine of qualified immunity. Because the individual Defendants herein committed no constitutional tort, Defendant City of St. Louis is not liable to Plaintiff on any theory.

127.   Further answering, Defendants and each of them state that Plaintiff failed to mitigate his damages by failing to disperse as requested by officers of the law and by failing promptly to seek medical attention or treatment for claimed injuries.

128.   Further answering, Defendants state that all state law claims asserted against any defendant in an individual or official capacity are barred by official immunity or by sovereign immunity in that the individual defendants herein, in taking any actions with regard to Plaintiff were exercising discretion in the performance of official duties in preserving public order and arresting persons reasonably believed to be violating valid ordinances or statutes.

129.   Further answering, Defendants state that all state law claims asserted against any defendant in an individual or official capacity are barred because, at the time of Plaintiff's alleged injury, each individual defendant was performing a public duty in responding to an unlawful assembly and other unlawful acts of numerous persons so as to preserve public order and the rights of the public in general.

130.   Further answering, Defendants state that liability, if any, to Plaintiff cannot be joint and several, and damages, if any, can be awarded against any defendant solely based on that individual defendant's conduct directly causing such damages.

131.   Further answering, Defendants state that any use of force by the individual

defendants herein against Plaintiff was privileged because the force used was reasonably applied (a) in order to overcome unlawful resistance to or interference with an arrest, which Plaintiff knew was occurring, (b) in self-defense by the individual defendants, against whom Plaintiff used or threatened to use force to prevent defendants from arresting another person or persons, (c) in defense of third persons, namely other officers at the scene of Plaintiff's conduct, against whom Plaintiff was using or threatening the use of force, or (d) as otherwise authorized by Missouri law, including but not limited to §563.021 and §563.046, RSMo.

132.     Further answering, Defendants state that the injuries suffered by Plaintiff, if any, were of such a nature as can be remedied by existing remedies under the law of Missouri, which state law remedies are sufficient post-deprivation remedies so that Plaintiff was not and is not deprived of any liberty or property interest without due process of law as prescribed by the Fourteenth Amendment by reason of the acts or conduct of Defendants.

133.     Further answering, Defendants state that, with respect to any negligence count asserted by Plaintiff, if Plaintiff suffered any injury by reason of any negligent action of Defendants--which Defendants deny--then and in that event fault must be apportioned to Plaintiff by reason of Plaintiff's negligence or assumption of risk in that Plaintiff, by assaulting or resisting officers of the law at the time and date described in the second amended complaint, and failing to disperse when commanded,  chose to encounter the known risk of injury to himself arising from the alleged breach of duty by defendants.

134.     Further answering, defendants state that the state law claims against Defendant City of St. Louis are barred by sovereign immunity.

135.     Defendant incorporates each and every additional affirmative defense that may be uncovered or made known during the investigation and discovery of this case. Defendant specifically reserves the right to amend this Answer to include additional affirmative defenses at a later time.

WHEREFORE, having fully answered, Defendants respectfully request that this Court

dismiss this case with prejudice, and for any other such relief as this Court deems proper, including an award of reasonable attorney's fees.

Respectfully submitted,
JULIAN L. BUSH
CITY COUNSELOR

*/s/ Amy M. Raimondo*
Amy Raimondo 71291(MO)
Assistant City Counselor
raimondoa@stlouis-mo.gov
Brandon Laird, 65564 (MO)
Assistant City Counselor
lairdb@stlouis-mo.gov
Robert H. Dierker 23671(MO)
Associate City Counselor
dierkerr@stlouis-mo.gov
Abby Duncan 67766 (MO)
Assistant City Counselor
Megan Bruyns 69987(MO)
Assistant City Counselor
1200 Market St.
City Hall, Rm 314
St. Louis, MO 63103
314-622-3361
Fax 314-622-4956
*Attorneys for Defendants*